# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

GREGORY G. WHITE,

        Petitioner,    :    Case No. 3:15-cv-092

- vs -    District Judge Thomas M. Rose
    Magistrate Judge Michael R. Merz

RHONDA RICHARDS, Warden,
Madison Correctional Institution,

    :

        Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on recommittal from Judge Rose to reconsider the two pending Reports and Recommendations in light of Petitioner's Objections (ECF Nos. 12, 14, 16, 17).

Although White pled three Grounds for Relief, his Objections relate only to the recommended dismissal of Ground Two which reads

> **Ground Two:** Denial of due process – speedy trial rights.
>
> **Supporting Facts:** Respondent assessed Petitioner a three (3) year continuance on June 6, 2014 presumably for a parole violation which in effect was a delayed final revocation hearing which occurred more than nine (9) years after parole violator warrant was executed in violation of *Morrissey v. Brewer; Black Romano; Pollard v. United States,* 352 U.S. 354 (1957); *Barker v. Wingo,* (1972), 407 U.S. 514 and Ohio Revised Code 2967.15(B).

(Petition, ECF No. 1, PageID 7.)

1

In December 2004 White pled guilty to charges for which he received an agreed sentence of ten years, a term which expired July 16, 2014.  Shortly before that, on May 27, 2014, he had a hearing with the Parole Board after which his incarceration was continued for three years.  White contends this was a final parole revocation hearing, unconstitutionally delayed from the time of his new conviction.  The State contends and the Magistrate Judge found that the actual revocation occurred in 2005 and that White had waived a hearing at the time.  White objects.

**Failure to Determine Subject Matter Jurisdiction**

White's first objection is that the Magistrate Judge did not determine subject matter jurisdiction of both the federal and state courts, a step which he alleges is mandatory.

The jurisdiction of federal district courts to grant the writ of habeas corpus is codified at 28 U.S.C. § 2241.  It was White who invoked the Court's jurisdiction by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 on the form prescribed by the Rules Governing § 2254 Cases.  That form does not include a blank for asserting subject matter jurisdiction, but the Magistrate Judge hereby determines the Court does have such jurisdiction.

White also claims a district court is required to determine the subject matter jurisdiction of "the court or entity from which the record comes." (Objections, ECF No. 16, citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), and *Mitchell v. Maurer*, 293 U.S. 237 (1934)).

In *Steel Co.,* the Supreme Court held that a federal court must decide whether it has subject matter jurisdiction before deciding the merits of a case.  In particular, it held federal courts cannot assume jurisdiction hypothetically.  No state court was involved in the case.  The

holding of the Supreme Court was that it had to determine its own jurisdiction and that of the court from which the record came, in that case, the United States Court of Appeals for the Seventh Circuit. The jurisdictional holding was that the plaintiff in the lower court did not have standing to bring suit under Article III of the Constitution and therefore the case had to be dismissed. There is no question here of White's standing to complain of any unconstitutionality in his detention: the writ of habeas corpus to contest such detentions is recognized in the Constitution itself, in the Suspension Clause.

In *Mitchell v. Maurer, supra*, the question was again federal subject matter jurisdiction. The Supreme Court held there was no such jurisdiction based on diversity of citizenship when there was not complete diversity of citizenship among the parties.

White would state a claim cognizable in habeas corpus if he alleged that the state courts which committed him to prison lacked subject matter jurisdiction. But he has never made that assertion and it would be meritless, since the Clark County Common Pleas Court plainly has subject matter jurisdiction of felony criminal cases committed in that county.

**Improper Reinterpretation of the Meaning of State Law**

In his second objection, White asserts the Magistrate Judge has somehow erred by reinterpreting state law. He cites several cases for the proposition that in a criminal case, final judgment includes a sentence. In other words, a judgment is not final unless it includes a sentence (Objections, ECF No. 16, PageID 287-89). There is no doubt that every one of White's cases was terminated in the Common Pleas Court with a judgment. The Warden recited the history in the Return of Writ and White did not dispute it. This is not a case where there is no

final judgment of a committing court. White has not shown that the cases he relies on about final judgments from courts apply to orders from a parole board or officer, which is what he is complaining about.

White also asserts that the Magistrate Judge has improperly interpreted a statute and recites the plain meaning rule for interpreting statutes. However, the relevant provision of law to which White refers is an administrative regulation, Ohio Administrative Code § 5129:1-1-18(C), not a statute (See ECF No. 16, PageID 288). In interpreting administrative regulations, courts are to give deference to the agency's interpretation. *Mullins Coal Co. of Virginia v. Director, OWCP*, 484 U.S. 135 (1987). The Ohio Adult Parole Authority interpreted the regulation in question to provide for a final revocation hearing on White's old convictions when he was received on the new ten-year sentence. The parole officer in 2005 did not need to determine at that time how much more time would be served on the old convictions because White had a ten-year definite term to do on the new conviction.

White asserts that the parole violation warrant against him was executed on April 22, 2005, instead of being lodged as a detainer, in violation of *Moody v. Daggett,* 429 U.S. 78 (1976). White misinterprets *Moody*. In that case the Supreme Court held that a federal parolee arrested for a new crime committed while on parole was not deprived of any liberty interest protected by the Due Process Clause when a violation warrant was lodged against him but no violation hearing was held until the new sentence was served. In other words, the Supreme Court held lodging the warrant as a detainer was a permissible, but not necessarily a mandatory, way of proceeding.

Nothing in *Moody* suggests a parole authority cannot proceed with the revocation proceeding promptly but defer a decision on the amount of additional time to be served until

4

after the new sentence is complete.  In fact, this way of proceeding is most protective of a prisoner's liberty interests.  The revocation hearing is held when the facts which will have to be decided in the hearing are fresh in the minds of witnesses.  Then the amount of additional time to be imposed is postponed until the prisoner has had a chance to show no more time is needed for his rehabilitation.

**Waiver of Mitigation Hearing**

In April 2005,[1] after being returned to prison on his new conviction, White was screened and found to be a member of the *Kellogg* settlement class entitled to a mitigation hearing.  On April 22, 2005, after a fifty-minute interview with a parole officer, White signed a Waiver of *Kellogg* Mitigation Hearing (Return of Writ, ECF. No. 9, Ex. 21, PageID 191).  The text of the Waiver reads in its entirety:

> I understand that I have been identified as a *Kellogg* Class Member, thereby entitling me to a mitigation hearing as defined in the consent decree. I have been advised of my rights regarding said mitigation hearing.  I have considered the options available to me, and I knowingly, voluntarily and intelligently waive my right to a mitigation hearing.  I have been offered no promises, assurances or guarantees, and do not request the assistance of counsel m executing this waiver.

*Id.*  White acknowledges his signature, but says the "state court record is silent as to demonstrating that petitioner knowingly and intelligently waiver [sic] his right to mitigation hearing because there is no indication that he was informed of the procedural rights mandated under *Morrissey v. Brewer*, 408 U.S. 471 (1972), and *Black v. Romano*, 471 U.S. 606 (1985) . .

---

[1] The Report incorrectly, by reason of a typographical error, says April 2015, but the correct date is April 2005.

." (ECF. No. 16, PageID 289-290.)

There is no assertion by Respondent that White waived any constitutional rights he may have had directly under the cited Supreme Court precedent. Rather, his inclusion in the *Kellogg* class stems from his having been already on parole when the Adult Parole Authority adopted new regulations providing that there would be no parole revocation mitigation hearing for those parolees who committed new felonies while released on parole. *Kellogg v. Shoemaker,* 46 F.3d 503 (6th Cir. 1995). In the *Kellogg* case, the Sixth Circuit held that the new rule could not be applied retroactively to persons who committed their initial offense before September 1, 1992. Those persons are entitled only to a mitigation hearing under the *Kellogg* consent decree and that is all that White waived.

As to lack of a record, White relies on *Johnson v. Zerbst*, 304 U.S. 458 (1938), and *Carnley v. Cochran*, 369 U.S. 506 (1962)(ECF No. 16, PageID 290). Both of those cases, however, involved waiver of counsel for trial, not the waiver of a mitigation hearing under *Kellogg*. No United States Supreme Court precedent clearly establishes what process is required under those circumstances. White must therefore be held to his representation that he understood the rights he was waiving.

**Misapplication of *Klopp v. Wolfe***

White claims the Report misapplies *Klopp v. Wolfe*, 8 Fed. App'x. 444 (6th Cir. 2001). For the reasons set forth in the original Report, the Magistrate Judge continues to understand *Klopp* as supporting the Warden's position, not White's (Report, ECF No. 12, PageID 271).

6

**Conclusion**

Having reconsidered the case in light of White's Objections, the Magistrate Judge again respectfully recommends the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

August 21, 2015.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).